# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SGT. JEFFREY S. SARVER,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE HURT LOCKER, LLC;  MARK BOAL;<br>KATHRYN BIGELOW;  GREG SHAPIRO;<br>NICHOLAS CHARTIER;  TONY MARK;<br>DONALL MCCLUSKER;  SUMMIT<br>ENTERTAINMENT, LLC;  VOLTAGE<br>PICTURES, LLC; GROSVENOR PARK<br>MEDIA, LP;  FIRST LIGHT<br>PRODUCTIONS, INC.;  and PLAYBOY<br>ENTERPRISES, INC., Jointly and Severally,<br><br>　　　　　　　　Defendants. | Civil Action No.  2:10-cv-01076 DMC (MF)<br><br>Return Date:  July 6, 2010<br><br>Document electronically filed.<br><br>Oral Argument Requested |

---

**DEFENDANTS THE HURT LOCKER, LLC, VOLTAGE PICTURES, LLC, AND NICOLAS CHARTIER'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [FED. R. CIV. P. 12(b)(2)], IMPROPER VENUE [FED. R. CIV. P. 12(b)(3)], OR IN THE ALTERNATIVE, TO TRANSFER VENUE [28 U.S.C. §1404(a)], AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED [FED. R. CIV. P. 12(b)(6)]**

---

**SILLS CUMMIS & GROSS P.C.**
One Riverfront Plaza
Newark, NJ 07102-5400
P:  (973) 643-7000
F:  (973) 643-6500

-and-

Of Counsel
**EISNER, FRANK & KAHAN**
9601 Wilshire Blvd., Suite 700
Beverly Hills, California 90210
P: (310) 855-3200
F: (310) 855-3201

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

RELEVANT FACTUAL BACKGROUND ...........................................................3

ARGUMENT .......................................................................................................6

I.  THE CLAIMS AGAINST DEFENDANTS HURT LOCKER,
    VOLTAGE PICTURES, AND CHARTIER SHOULD BE
    DISMISSED FOR LACK OF PERSONAL JURISDICTION ....................6

    A.  Pertinent Jurisdictional Facts ..............................................................6

    B.  Standard of Review .............................................................................7

    C.  New Jersey Has No General Personal Jurisdiction Over
        Defendants Hurt Locker, Voltage Pictures, or Chartier...................10

    D.  New Jersey Has No Specific Personal Jurisdiction Over
        Defendants Hurt Locker, Voltage Pictures, or Chartier...................11

II. THIS ACTION SHOULD BE DISMISSED BECAUSE IT WAS
    BROUGHT IN AN IMPROPER VENUE ...................................................12

    A.  This Court May Dismiss Any Action Brought In An Improper
        Venue. .................................................................................................12

    B.  New Jersey Is Not A Proper Venue For This Case............................12

        1.  All Of The Defendants Do Not Reside In New Jersey. ...........13

        2.  An Insubstantial (If Any) Part of the Events Giving Rise
            to Plaintiff's Claims Occurred in New Jersey. .......................13

        3.  Venue Is Not Proper In New Jersey Under Section
            1391(a)(3) Because There Is At Least One Other
            Jurisdiction In Which This Action Properly Could Have
            Been Brought..........................................................................15

III.   THIS COURT MAY EXERCISE ITS DISCRETION AND
       TRANSFER THIS ACTION TO A MORE CONVENIENT FORUM,
       *I.E.*, THE CENTRAL DISTRICT OF CALIFORNIA ...............................17

       A.   This Action Might Have Been Brought Initially In The Central
            District Of California. ........................................................................18

       B.   The Convenience Of The Parties And Witnesses, And The
            Interests Of Justice, Merit Transferring This Action To The
            Central District Of California. ..........................................................19

            1.   Each Of The Private Interest Factors Weigh In Favor Of
                 Transferring The Action To California. ..................................20

                 a)   Plaintiff's Choice Of New Jersey As The Forum Is
                      Entitled To Little Weight, If Any..................................20

                 b)   Plaintiff's Claims Did Not Arise In New Jersey ...........22

                 c)   Convenience of the Parties Weighs in Favor of
                      Transfer .......................................................................23

                 d)   Convenience of Potential Witnesses Weighs in
                      Favor of Transfer.........................................................23

                 e)   Access to Documentary Evidence Weighs in Favor
                      of Transfer...................................................................24

            2.   The Public Interest Factors Weigh In Favor Of
                 Transferring The Action To California. ..................................25

                 a)   California Has a Local Interest in this Lawsuit ............25

                 b)   New Jersey Law Will Not Govern this Case.................26

                 c)   The Burden of Jury Duty Should Not Be Imposed
                      on New Jersey Citizens................................................26

            3.   The Number And Type Of Factors Weighs Heavily In
                 Favor Of Transfer To California .............................................27

IV.   EACH OF THE CLAIMS ASSERTED AGAINST THE HURT
      LOCKER, VOLTAGE PICTURES, AND CHARTIER FAIL AS A
      MATTER OF LAW AND SHOULD BE DISMISSED .............................27

      A.    Standard of Review ........................................................27

      B.    The First Amendment Bars Plaintiff's Claims For Right of
            Publicity, False Light, and Defamation, And, Therefore, Counts
            I, II And III Should Be Dismissed ....................................29

      C.    The Complaint Fails to State a Claim for Breach of Contract
            Against Hurt Locker, Voltage Pictures, or Chartier, And,
            Therefore, Count IV Should Be Dismissed ......................30

      D.    The Complaint Fails to State a Claim For Intentional Infliction
            of Emotional Distress Against Hurt Locker, Voltage Pictures or
            Chartier, And, Therefore, Count V Should Be Dismissed ...............32

      E.    The Complaint Fails to State a Claim For Intentional or
            Constructive Fraud Against Hurt Locker, Voltage Pictures, or
            Chartier, And, Therefore, Counts VI and VII Should Be
            Dismissed .......................................................33

            1.    Plaintiff's Claim for Intentional Fraud Fails ...........33

            2.    Plaintiff's Claim for Constructive Fraud/Negligent
                  Misrepresentation Fails...........................................35

CONCLUSION ...................................................................37

# TABLE OF AUTHORITIES

**Federal Cases**

American Tel. & Tel. Co. v. MCI Commc'ns, 736 F. Supp. 1294
(D.N.J. 1990)......................................................................... 20, 21, 22

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) ...................................... passim

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................... passim

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) .................... 9, 10

Calkins v. Dollarland, Inc., 117 F. Supp. 2d 421 (D.N.J. 2000) ........... 18

Carteret Sav. Bank v. Shushan, 954 F.2d 141 (3d Cir. 1992) ................. 8

CIBC World Mkt., Inc. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d
637 (D.N.J. 2004) ...................................................................... 18

Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19 (1960)..................... 18

Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291 (3d Cir.
1994) ........................................................................................ 18

Duckworth v. Gary Locke, 09-1212 (GEB), 2009 WL 2231199 at *2
(D.N.J. July 24, 2009)......................................................... 21, 22

E.I. Du Pont de Nemours Co. v. Diamond Shamrock Corp., 522 F.
Supp. 588 (D. Del. 1981)............................................................ 20

ETW Corp. v. Jireh Publishing, Inc., 332 F.3d 915 (6th Cir. 2003) ...... 29

Ferens v. John Deere Co., 494 U.S. 516 (1990) .................................. 26

Frederico v. Home Depot, 507 F.3d 188 (3d Cir. 2007)........................ 34

Gulf Oil v. Gilbert, 330 U.S. 501 (1946) ........................................... 19

Hanson v. Denckla, 357 U.S. 235 (1958)............................................. 9

Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408 (1984) ........................................................................................... 9, 10

Hoffer v. InfoSpace.com, Inc., 102 F. Supp. 2d 556 (D.N.J. 2000)...................... 26

IMO Indus., Inc. v. Kiekert AG, 155 F.3d 254 (3d Cir. 1998) ........................... 8, 9

In re Consol. Parlodel Lit., 22 F. Supp. 2d 320 (D.N.J. 1998).............................. 21

Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495 (1952)........................................... 29

Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995) ................ 18, 19, 20, 23

Karu v. Feldman, 119 N.J. 135 (1990) ................................................................ 35

Leroy v. Great Western United Corp., 443 U.S. 173 (1979) ........................... 12, 14

Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518 (2000) .......................................................................................... 23, 26

Lum v. Bank of Am., 361 F.3d 217 (3d Cir. 2004) ............................................... 34

Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434 (D.N.J. 2002) ................................................................................................. 36

Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217 (3d Cir. 1992) ................................................................................................ 8

Nat'l Property Investors VIII v. Shell Oil Co., 917 F. Supp. 324 (D.N.J. 1995)............................................................................................ 23

New Kids On The Block v. News America Pub., Inc., 745 F. Supp. 1540 (C.D. Cal. 1990) ...................................................................... 29, 30

Olberding v. Illinois Cent. R.R. Co., 346 U.S. 338 (1953)................................... 12

Papasan v. Allain, 478 U.S. 265 (1986) .............................................................. 28

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008)............................. 28

Pinker v. Roche Holdings, Ltd., 292 F.3d 361 (3d Cir. 2002) ................................. 7

Piper Aircraft Co. v. Reyno, 454 U.S. 235 (1981) ..................................... 18, 20, 21

Plum Tree, Inc. v. Stockment, 488 F.2d 754 (3d Cir. 1973) ................................... 19

Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n, 819 F.2d 434
      (3d Cir. 1987) ........................................................................................ 8

Qudes v. Block, 516 F. Supp. 13 (D.D.C. 1981) ..................................................... 21

Remick v. Manfredy, 238 F.3d 248 (3d Cir. 2001) ................................................. 9

Rogers v. Grimaldi, 875 F.2d 994 (2d Cir. 1989) ................................................... 29

Ruffin-Steinbeck v. dePasse, 267 F.3d 457 (6th Cir. 2001) ................................... 30

Rutherford v. Sherbourne Corp., 616 F. Supp. 1456 (D.N.J. 1985) ...................... 23

Schad v. Borough of Mt. Ephraim, 452 U.S. 61 (1989) ......................................... 29

SEC v. Page Airways, Inc., 464 F. Supp. 461 (D.D.C. 1978) ................................ 19

Shell v. Shell Oil Co., 165 F. Supp. 2d 1096 (C.D. Cal. 2001) ............................. 12

South Broward Hosp. Dist. v. Medquist Inc., 516 F. Supp. 2d 370
      (D.N.J. 2007) ........................................................................................ 36

Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003) ..................... 7, 9

Van Cauwenberghe v. Biard, 486 U.S. 517 (1988) ................................................ 18

Van Dusen v. Barrack, 376 U.S. 612 (1964) .......................................................... 18

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980) ....................... 9

**Federal Statutes**

28 U.S.C. §1391 ..................................................................... 13, 14, 15, 16, 18

28 U.S.C. §1404 ................................................................................... 1, 3, 17

28 U.S.C. §1406 ........................................................................................... 12

**Federal Rules**

Fed. R. Civ. P. 12 ....................................................................... 1, 12, 27, 35

Fed. R. Civ. P. 9(b)........................................................................ 33, 35

**State Cases**

Banco Popular N. Am. v. Gandi, 184 N.J. 161 (2005) .......................................... 34

Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355 (1988) ............................... 32, 33

G.D. v. Kenny, 411 N.J. Super. 176 (App. Div. 2009)........................................ 32

Gherardi v. Board of Educ. of the City of Trenton, 53 N.J. Super. 349
    (App. Div. 1958) .......................................................................... 31

Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555
    (1985)......................................................................................... 31

Taylor v. Metzger, 152 N.J. 490 (1998) ................................................ 32

Turner v. Wong, 363 N.J. Super. 186 (App. Div. 2003)...................................... 33

Young v. Hobart West Group, 385 N.J. Super. 448 (App. Div. 2005).................. 32

**State Rules**

N.J. Civ. Prac. R. 4:4-4 ....................................................................... 8

## **INTRODUCTION**

Defendants The Hurt Locker, LLC ("Hurt Locker"), Voltage Pictures, LLC ("Voltage Pictures"), and Nicolas Chartier ("Chartier") respectfully submit this Memorandum of Law in support of their motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), improper venue pursuant to Fed. R. Civ. P. 12 (or in the alternative, to transfer pursuant to 28 U.S.C. §1404(a)), and failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

This action arises out of the facts and circumstances that led to the 2009 motion picture "The Hurt Locker" (also referred to herein as the "Film"), which Plaintiff alleges is about his life as an explosive ordnance disposal ("EOD") technician for the United States Army during his deployment in Iraq.  Plaintiff asserts claims against all of the defendants for misappropriation of his name and likeness, false light invasion of privacy, defamation, breach of contract, intentional infliction of emotional distress, and fraud.

Plaintiff brings this action in the District of New Jersey, which has neither general nor specific personal jurisdiction over Hurt Locker, Voltage Pictures, or Chartier.  These defendants have never had any contact whatsoever with the State of New Jersey.  Plaintiff concedes in the Complaint that both Hurt Locker and Voltage Pictures are California companies that conduct business in the state of

California, and that Mr. Chartier is a resident of the state of California, and that he conducts business in that state.  The Complaint does not, and Plaintiff cannot, allege that these defendants have any contact whatsoever with the New Jersey because they do not.

Moreover, none of Plaintiff's claims arise out of events that occurred in New Jersey.  Rather, each of Plaintiff's claims arise out of his assertions that defendant Mark Boal made misrepresentations to Plaintiff and violated Department of Defense "Ground Rules" applicable to embedded media members because, Plaintiff alleges, instead of reporting on EOD operations in Iraq generally, Boal gathered information about Plaintiff personally and Plaintiff's personal experiences as an EOD technician.  According to the Complaint, defendant Boal's offending activities occurred first in Baghdad, Iraq and, subsequently, in the State of Wisconsin.

The Complaint is devoid of a single fact that ties any of the thirteen named defendants to New Jersey.  Neither Plaintiff nor any of the defendants reside or conduct business in New Jersey.  Plaintiff himself is allegedly a citizen of Tennessee.  The Film was filmed in Jordan and Canada, and was produced in California.

Plaintiff attempts to establish jurisdiction and venue in the District Court of New Jersey by alleging that he was a resident of Dover, New Jersey, prior to

2

August, 2009, and that the Film was distributed to various movie theaters and retail stores across the country, including New Jersey.  Neither of these allegations forms a proper basis for jurisdiction or venue.  Indeed, just two weeks before filing this action, Plaintiff sent the defendants a draft of the complaint he intended to file, and that draft pleading reflected his intention to file the action in the United States District Court for the Central District of California, a district where venue is proper.

To that end, the convenience of witnesses and the interests of justice mandate that if this action is not dismissed, the Court should exercise its discretion pursuant to 28 U.S.C. §1404(a) to transfer this action to the United States District Court, Central District of California, where this action could have been brought initially.

Finally, and as demonstrated below, each of Plaintiff's claims for relief against Hurt Locker, Voltage Pictures and Chartier fail as a matter of law and should be dismissed.

## RELEVANT FACTUAL BACKGROUND

Plaintiff Jeffrey S. Sarver is a member of the U.S. Army who is a trained bomb disposal technician.  See Compl., ¶¶26, 32, 34.[1]  While stationed in Iraq,

---

[1]     Defendants take the allegations pled in the Complaint to be true for purposes of this motion only.

Plaintiff met defendant Boal, a journalist embedded with Plaintiff's 788th Ordnance Company.  Id. at ¶39.  Plaintiff alleges that during Boal's embedment, he became acquainted with Plaintiff's personal life story and witnessed Plaintiff's missions in the field.  See id. at ¶¶43-46.  Plaintiff alleges that defendant Boal then used this personal information to write an article published in 2005 by defendant Playboy Enterprises, Inc. ("Playboy"), and that the article was later used as a basis for the 2009 movie "The Hurt Locker."  See id. at ¶63, ¶93.

Although the Film makes no reference to Plaintiff by name or otherwise, Plaintiff nevertheless alleges that the Film misappropriates his name and likeness, invades his privacy, and depicts him in a derogatory manner designed to inflict severe emotional distress.  See id.  Plaintiff also alleges that defendants' conduct constitutes breach of contract.[2]  Id. at ¶¶83-90.

Defendant Hurt Locker (and others) produced the Film, which is inspired by the collection of people and events experienced by defendant Boal during his time as an embedded reporter in Iraq.  See Certification of Nicolas Chartier ("Chartier Cert."), ¶9.  No part of the Film's production took place in New Jersey.  Principal photography was shot internationally in Jordan; some secondary footage was shot

---

[2]    Plaintiff alleges to be a third party beneficiary to a contract between Defendant Playboy and the United States Department of Defense.  See Compl. at ¶¶83-90.

in Canada.  See Chartier Cert., ¶10.  Pre-production, domestic production work, and post-production work for the Film was performed in Southern California.  Id.

None of the defendants named in this action are New Jersey residents.  With the exception of Playboy, the named entities are all domiciled in California.  See Compl. at ¶¶3, 10-14.  Playboy's headquarters is in Illinois.  Id. at ¶15.  Similarly, the named individual defendants are residents of California.[3]  See id. at ¶¶5-9.  The Complaint alleges that each and every named defendant conducts business in California.  See Compl., ¶¶3-15.

"The Hurt Locker" was initially screened at film festivals outside the U.S. See Chartier Cert., ¶¶10, 13.  It was later introduced into U.S. markets in Los Angeles and New York.  Id.  The film eventually enjoyed a limited release throughout the U.S., which included only a handful of theaters in New Jersey during the timeframe that Plaintiff alleges to have resided in that state.  Id.; see also Certification of William Lewis, ¶¶5-8.  Neither Hurt Locker nor Voltage Pictures were responsible for or participated in the Film's distribution.  See Chartier Cert., ¶ 4.

---

[3]  The Complaint alleges that defendant Boal is a citizen of New York.  See Compl., ¶4.  This is incorrect; he is a citizen of California.  See Certification of Mark Boal ("Boal Cert."), ¶2, filed concurrently herewith.

Plaintiff filed this action on March 2, 2010 in the United States District Court for the District of New Jersey.  However, just two weeks prior to doing so, counsel for Plaintiff sent all of the defendants a draft complaint, and that draft complaint reflected his intention to file the action in the District Court for the Central District of California.  See Certification of Timothy J. Gorry, ¶2-3, filed concurrently herewith.

## ARGUMENT

## I.   THE CLAIMS AGAINST DEFENDANTS HURT LOCKER, VOLTAGE PICTURES, AND CHARTIER SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION

### A.   Pertinent Jurisdictional Facts

Defendants Hurt Locker and Voltage Pictures are both California Limited Liability Companies that conduct business in the state of California, where both have their principal offices and headquarters.  See Compl., ¶¶3, 11.

Hurt Locker produced the "The Hurt Locker," and Voltage Pictures was the foreign sales agent on the Film.  Chartier Cert., ¶9.  Neither Hurt Locker nor Voltage Pictures conducts business of any kind in New Jersey.  Id. at ¶¶11, 15.  These corporate defendants have never conducted or participated in a meeting within the State of New Jersey.  Id. at ¶15.  Neither has produced or distributed any goods, or performed any services in New Jersey.  Id.  Neither of them owns property in New Jersey, and neither have any offices, facilities, or employees in New Jersey.  Id.  Hurt Locker and Voltage Pictures have no resident agents in New

6

Jersey, are not licensed to transact business in New Jersey, and do not transact business here.  Id. at ¶16.

Neither Hurt Locker nor Voltage Pictures have ever participated in the production or sale of a motion picture in which any part of that motion picture was performed within New Jersey.  Id. at ¶11.

Likewise, Defendant Chartier has no contacts with New Jersey.  He is a resident of California, and conducts business in that state.  See Compl., ¶7; Chartier Cert., ¶17.  Chartier is the Chief Executive Officer of Voltage Pictures (Id. at ¶3), the Secretary of Hurt Locker (Id. at ¶6), and the registered agent for service of process for both of these defendants.  Id.  Chartier does not conduct business of any kind in New Jersey.  Id. at ¶18.  He is not employed by a company that is incorporated, maintains offices, or conducts business here.  Id. at ¶19.  Indeed, Chartier has never even been to New Jersey.  Id. at ¶18.

## B.    Standard of Review

"[I]n deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff."  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 457 (3d Cir. 2003) (citing Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 368 (3d Cir. 2002)). When a defendant raises a jurisdictional defense, as Defendants Hurt Locker, Voltage Pictures and Chartier have in this case, the burden falls on the plaintiff to

7

come forward with sufficient facts to establish that jurisdiction is proper. <u>See</u> <u>Carteret Sav. Bank v. Shushan</u>, 954 F.2d 141, 146 (3d Cir. 1992).

Plaintiff must meet this burden and present a <u>prima</u> <u>facie</u> case for the exercise of personal jurisdiction by "establishing with reasonable particularity sufficient contacts between the defendant and the forum state." <u>Mellon Bank</u> <u>(East) PSFS, Nat'l Ass'n v. Farino</u>, 960 F.2d 1217, 1223 (3d Cir. 1992) (quoting <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434 (3d Cir. 1987)). In this case, Plaintiff must establish that sufficient contacts exist between Hurt Locker, Voltage Pictures, and Chartier, on the one hand, and New Jersey, on the other, to defeat the challenge to personal jurisdiction.

New Jersey permits long-arm jurisdiction to the extent that it comports with the Due Process Clause of the United States Constitution. <u>See</u> <u>N.J. Civ. Prac. R.</u> 4:4-4. Thus, federal courts applying New Jersey's long-arm jurisdiction may assert personal jurisdiction over non-resident defendants to the extent permitted by due process principles. <u>See</u> <u>IMO Indus., Inc. v. Kiekert AG</u>, 155 F.3d 254, 258-59 (3d Cir. 1998). The exercise of this Court's jurisdiction comports with constitutional due process only if Defendants have "purposefully directed [their] activities toward residents of the forum state, or otherwise 'purposefully availed [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" <u>Id.</u> at 259 (internal citations omitted); <u>see</u> <u>also</u>

8

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980); Hanson v. Denckla, 357 U.S. 235, 253 (1958).

Personal jurisdiction may be exercised under either a general or specific jurisdiction theory.  See Remick v. Manfredy, 238 F.3d 248, 255 (3d Cir. 2001). General jurisdiction exists over Defendants Hurt Locker, Voltage Pictures and Chartier if the Court finds that their contacts with the forum are "continuous and systematic."  Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 416, (1984).  Specific jurisdiction, on the other hand, focuses on the particular circumstances of the case.

To show that specific jurisdiction exists, Plaintiff must satisfy two requirements.  See IMO Indus., 155 F.3d at 259.  First, Plaintiff must establish that Defendants have "constitutionally sufficient minimum contacts with [New Jersey]."  Toys "R" Us, 318 F.3d at 451 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)).  Alternatively, the first requirement may be satisfied if Defendants' "tortious conduct" has "effects in the forum state."  Toys "R" Us, 318 F.3d at 455 n.6 (citing Remick, 238 F.3d at 258).  Second, to satisfy due process requirements, personal jurisdiction over Defendants must comport "with traditional notions of fair play and substantial justice," i.e.,  Defendants "should reasonably anticipate being haled into court in the forum."  Id. (internal quotation marks and citations omitted).

9

### C.   New Jersey Has No General Personal Jurisdiction Over Defendants Hurt Locker, Voltage Pictures, or Chartier

General jurisdiction over a nonresident defendant is available when the defendant is domiciled in the forum state or when the defendant engages in "continuous and systematic" general contacts in the forum state.  See Helicopteros, 466 U.S. at 414-16.   Random, fortuitous, or tenuous contacts do not count.  Burger King, 471 U.S. at 475.

Here, neither Hurt Locker, Voltage Pictures, or Chartier has any "continuous and systematic" contact with New Jersey that would give rise to general jurisdiction.   As described above and supported by the Certification of Mr. Chartier, Defendants Hurt Locker, Voltage Pictures, and Chartier do not have any contacts with the State of New Jersey whatsoever.   None of these defendants do any business in New Jersey, they have not participated in meetings in New Jersey, do not produce or distribute any goods in New Jersey, do not own property in New Jersey, and do not pay taxes of any kind to the State of New Jersey.   Chartier has never even travelled to New Jersey.

Indeed, there are no allegations in the Complaint to suggest that Defendants Hurt Locker, Voltage Pictures, and Chartier have "continuous and systematic" contacts with New Jersey.   Therefore, there is no basis upon which to assert general personal jurisdiction over them in this case.

10

**D.    New Jersey Has No Specific Personal Jurisdiction Over Defendants Hurt Locker, Voltage Pictures, or Chartier**

Similarly, there is no specific jurisdiction over Defendants Hurt Locker, Voltage Pictures, and Chartier, because none of these defendants possess sufficient minimum contacts with New Jersey sufficient to justify bringing any of the claims against them in that forum.   Likewise, the allegations in the Complaint do not establish "tortious conduct" or effects in New Jersey by these defendants.

The only allegations in the Complaint that could possibly support specific personal jurisdiction over these defendants is the allegation in Paragraph 17 that all of the named defendants wrote, released and distributed the film and DVD, "The Hurt Locker", to various movie theaters and retail stores located throughout the country, including theaters and retail stores located in New Jersey.  This allegation is erroneous.  Neither Hurt Locker, Voltage Pictures, nor Chartier wrote the Film, or were responsible for or participated in the distribution of the Film or DVD. Regardless, that the Film was seen in a handful of New Jersey theaters during the time that Plaintiff may have resided there does not create sufficient minimum contacts, nor does it establish that these defendants had sufficient contact with New Jersey to satisfy "tortious conduct" or effects in the forum state.

Furthermore, specific personal jurisdiction must comport with "traditional notions of fair play and substantial justice."   There are no allegations in the Complaint to suggest or demonstrate that these defendants should have reasonably

11

expected to be haled into a New Jersey court. On the contrary, these defendants have no contacts with New Jersey whatsoever. Therefore, to subject them to the jurisdiction of this Court would be entirely inconsistent with notions of fair play and substantial justice. The Court should dismiss them from this action.

## II.   THIS ACTION SHOULD BE DISMISSED BECAUSE IT WAS BROUGHT IN AN IMPROPER VENUE

### A.   This Court May Dismiss Any Action Brought In An Improper Venue.

Venue in federal courts is governed entirely by statute. See Shell v. Shell Oil Co., 165 F. Supp. 2d 1096, 1102 (C.D. Cal. 2001) (citing Leroy v. Great Western United Corp., 443 U.S. 173, 181 (1979)). The venue statutes are generally intended to protect a defendant from being forced to defend in an unfair or inconvenient forum. See Leroy, 443 U.S. at 183-84. "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction." Olberding v. Illinois Cent. R.R. Co., 346 U.S. 338, 340 (1953). Where venue is improper, a court must either dismiss under a motion pursuant to Federal Rule of Civil Procedure 12(b)(3) or transfer the matter to a proper venue under 28 U.S.C. §1406.

### B.   New Jersey Is Not A Proper Venue For This Case.

Plaintiff alleges that jurisdiction in this case is based on diversity of citizenship. See Compl., ¶¶16, 17. Therefore, the only available statutory basis for

12

venue is 28 U.S.C. §1391(a), which provides that a case based on diversity jurisdiction may:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

See 28 U.S.C. §1391(a).  New Jersey does not fit any of these three criteria.

### 1.    All Of The Defendants Do Not Reside In New Jersey.

The first prong of Section 1391(a) allows a suit to proceed in a judicial district where any defendant resides, if all defendants reside in the same State. New Jersey is an improper venue for the instant lawsuit under this prong because not all of the named defendants reside in New Jersey.  In fact, based upon the allegations in the Complaint, no defendant resides in the State.  See Compl., ¶¶3-15.  Even assuming that Section 1391(c) acts to bring one or more of the corporate defendants under New Jersey's jurisdictional purview, which the moving parties do not concede, none of the individuals is a resident of the State.  See Compl., ¶¶3-15.

However, and as is discussed more fully below, all of the defendants reside in the state of California, making the Central District of California a proper venue for this action.

### 2.    An Insubstantial (If Any) Part of the Events Giving Rise

**to Plaintiff's Claims Occurred in New Jersey.**

The second prong of Section 1391(a) allows a suit to proceed in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.  Plaintiff's choice of venue does not satisfy this criterion.

According to the Complaint, Plaintiff's claims arise out of three separate, but related, groups of operative facts.  The first group of facts concerns Plaintiff's overseas deployment, where he met Defendant Boal.  See Compl., ¶¶33-49. Plaintiff alleges that Boal was a member of the embedded media allowed to live, work and travel as part of Plaintiff's military unit in Baghdad, Iraq.  Id. at ¶¶29, 39. Plaintiff alleges that he (i.e., Plaintiff) shared personal aspects of his life with Boal, who followed Plaintiff during military operations so that he may gather information to write a story about Bomb Squad teams in Iraq.  Id. at ¶¶32-34, 41-46.  These events occurred in Baghdad, Iraq.  Id. at ¶39.

The second group of facts concerns Defendant Boal's alleged subsequent meeting with Plaintiff (and other service members) in 2005, after Plaintiff returned from overseas deployment.  Id. at ¶¶51, 52.  The Complaint alleges that this was a follow-up visit that would allow Boal to complete the article he was writing for Defendant Playboy.  Id. at ¶52.  These events occurred in Wisconsin.  Id. at ¶51.

The third group of facts concerns the production of the Film.  Id. at ¶¶59 – 68.  Plaintiff alleges that the film misappropriated his name and likeness, invaded

14

his privacy, and defamed him.  Id. at ¶¶63, 67, 68.  Plaintiff also alleges that defendants' conduct vis-à-vis production of the film (and the writing by Defendant Boal and publication by Defendant Playboy of the article) constitutes breach of contract in which Plaintiff alleges to be a third party beneficiary to contract between defendant Playboy and the United States Department of Defense.  Id. at ¶¶83-90.  Plaintiff asserts that the release of the Film has caused him injuries and damages, which consist of being denied the right to participate financially in the Film, injury to his reputation, and emotional distress.  Id. at ¶69.  Most of the Film's production was performed in California; none of it took place in New Jersey.  Chartier Cert., ¶10.

Because none of the operative facts are alleged to have occurred in New Jersey, this State is not a proper venue for this lawsuit.  Notably, however, a substantial part of the events that gave rise to this action occurred in California (specifically, Los Angeles), thus making the Central District a proper venue for this action.

### 3. Venue Is Not Proper In New Jersey Under Section 1391(a)(3) Because There Is At Least One Other Jurisdiction In Which This Action Properly Could Have Been Brought.

The final prong of Section 1391(a) allows for venue in a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

15

Here, there is another judicial district in which this action may have been brought, i.e., the Central District of California.  Therefore, Plaintiff cannot avail himself of Section 1391(a)(3) in an effort to defend his choice of venue.

There are two separate bases that support venue in the Central District of California.  First, Section 1391(a)(1) allows a suit to proceed in a judicial district where any defendant resides, if all defendants reside in the same State.  The Complaint alleges that almost all of the named defendants are citizens of California.  See Compl., ¶¶3-15.  There are two exceptions:  Defendants Boal and Playboy.  Id. at ¶4, ¶15 (asserting that Boal is a citizen of New York and Playboy is headquartered in Illinois).  However, Boal is, in fact, a resident of California. See Boal Cert., ¶2.  As well, for the purposes of Section 1391, Playboy is also a resident of California.  "A corporate defendant is a resident of any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." See 28 U.S.C. §1391(c).  Playboy maintains offices in California, has substantial business dealings in California, and is qualified to do business in that State.  See Compl., ¶15.  All of the defendants named in this action are residents of California, and most of them reside in the Central District, which makes the Central District a proper forum for this lawsuit.

Next, Section 1391(a)(2) supports venue in California because a substantial portion of the events giving rise to Plaintiff's claims occurred there.   Pre-

16

production, domestic production work and post-production work for the Film was undertaken in Southern California, and the Film was first screened domestically in Los Angeles, California.  Chartier Cert., ¶10.  A substantial amount of Plaintiff's claimed damages allegedly arise from the production and release of the Film.  <u>See</u> Compl., ¶69.

Because Plaintiff could have properly brought this action in the Central District of California, he cannot avail himself of Section 1391(a)(3) to establish venue in the District of New Jersey.

## III.   THIS COURT MAY EXERCISE ITS DISCRETION AND TRANSFER THIS ACTION TO A MORE CONVENIENT FORUM, *I.E.*, THE CENTRAL DISTRICT OF CALIFORNIA

As an alternative to dismissal, the Court may exercise its discretion pursuant to 28 U.S.C. §1404(a) to transfer this action to the Central District of California. All of the defendants are residents of California for jurisdictional purposes, and a substantial portion of the facts and circumstances that gave rise to Plaintiff's claims occurred in California.  The Central District of California is a far more convenient forum to litigate this action.

A court may transfer an action for the convenience of the parties and witnesses and in the interest of justice to any district where the action might have been brought initially.  28 U.S.C. § 1404(a).  The function of Section 1404(a) is "to prevent the waste of 'time, energy, and money' and to 'protect litigants, witnesses

and the public against unnecessary inconvenience and expense.'" <u>Van Dusen v.</u> <u>Barrack</u>, 376 U.S. 612, 616 (1964) (<u>quoting</u> <u>Cont'l Grain Co. v. Barge FBL-585,</u> 364 U.S. 19, 26-27 (1960)); <u>CIBC World Mkt., Inc. v. Deutsche Bank Sec., Inc.,</u> 309 F. Supp. 2d 637, 643 (D.N.J. 2004).  The moving party bears the burden of establishing that transfer is appropriate.  <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 248, (1981).  Analysis of whether transfer is warranted does not necessarily require an extensive investigation, but the moving party must demonstrate that the proposed alternative forum is more convenient than the present forum.  <u>Van</u> <u>Cauwenberghe v. Biard</u>, 486 U.S. 517, 529 (1988); <u>Jumara v. State Farm Ins. Co.,</u> 55 F.3d 873, 879 (3d Cir. 1995).  Section 1391(a)(2) provides that venue is proper in a diversity case where "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred."   <u>See</u> <u>also</u> <u>Calkins v. Dollarland,</u> <u>Inc.</u>, 117 F. Supp. 2d 421, 425-26 (D.N.J. 2000).  The "substantial part" standard is intended to preserve the element of fairness so that a defendant is not haled into a remote district court having no relationship to the dispute.  <u>See</u> <u>Cottman</u> <u>Transmission Sys., Inc. v. Martino</u>, 36 F.3d 291, 294 (3d Cir. 1994).

> **A.    This Action Might Have Been Brought Initially In The Central District Of California.**

As discussed in more detail in Section I(B)(3), above, the Central District of California is a proper venue for this action pursuant to 28 U.S.C. §1391(a). Therefore, the remaining issues are whether the interests of justice and

18

convenience of the parties and witnesses merit transfer to California.   Under the circumstances presented here, they do.

> **B.   The Convenience Of The Parties And Witnesses, And The Interests Of Justice, Merit Transferring This Action To The Central District Of California.**

The Court has broad discretion in deciding whether transfer is warranted. See Plum Tree, Inc. v. Stockment, 488 F.2d 754, 756 (3d Cir. 1973).   Although 28 U.S.C. § 1404 expressly includes three factors, the Court may also consider other factors.   See SEC v. Page Airways, Inc., 464 F. Supp. 461 (D.D.C. 1978).

The factors to be considered generally fall within the two broader categories of "private interests" and "public interests."   See Gulf Oil v. Gilbert, 330 U.S. 501, 508-09 (1946).   The private factors to be considered include: (1) plaintiff's forum choice; (2) defendant's forum preference; (3) whether the claim arose in another forum; (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of witnesses - but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) the location of any books or records similarly limited to the extent they may be unavailable in the alternative forum.   Jumara, 55 F.3d at 879 (citations omitted).

The public factors to be considered include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two forums from court

congestion; (4) the local interest in deciding controversies; (5) the public policies of the forum; and (6) in diversity cases, the familiarity of the trial judge with the applicable state law. Id. at 879-80. Although a plaintiff's choice of forum is accorded great weight, deference to the plaintiff's selected forum may be overcome, however, "if the private and public interest factors clearly point toward trial in an alternative forum." See Piper Aircraft Co., 454 U.S. at 255.

Finally, when making transfer determinations, the Third Circuit has also considered where the claim arose, the preferred forum of the defendant, enforceability of a judgment, practical considerations that could make trial easier or expeditious, and the public policies of the potential fora. See Jumara, 55 F.3d at 879-80. Given the circumstances presented here, both the private interest and public interest factors strongly favor transfer of the litigation to California.

### 1. Each Of The Private Interest Factors Weigh In Favor Of Transferring The Action To California.

Consideration of the following private interest factors militate in favor of transferring the lawsuit to the Central District of California.

### a) Plaintiff's Choice Of New Jersey As The Forum Is Entitled To Little Weight, If Any.

Plaintiff's choice of the forum is entitled to some weight, but not blind deference. "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." American Tel. & Tel. Co. v. MCI Commc'ns, 736 F. Supp. 1294, 1306 (D.N.J. 1990) (quoting E.I. Du Pont de Nemours Co. v.

20

Diamond Shamrock Corp., 522 F. Supp. 588, 592 (D. Del. 1981)).  "The plaintiff's

forum choice is given less weight if the elected forum is not the same as plaintiff's

residence, *and is at a high risk of being overridden* if not the forum where the

operative events occurred."  Duckworth v. Gary Locke, 09-1212 (GEB), 2009 WL

2231199 at *2 (D.N.J. July 24, 2009) (emphasis added); see also In re Consol.

Parlodel Lit., 22 F. Supp. 2d 320, 324 (D.N.J. 1998) *(*deference to plaintiff's

selected forum is diminished "where the central facts of a lawsuit occur outside the

chosen forum" or the plaintiff's choice of forum "has little connection with the

operative facts of the lawsuit.").

    Plaintiff's choice of venue should not be given any deference in this

instance.  First, Plaintiff concedes that he is a resident of Tennessee, *not* New

Jersey.  See Compl., ¶1.  Any weight to be given to Plaintiff's choice is weaker,

because the selected forum is not Plaintiff's home turf.  See Piper Aircraft Co. v.

Reyno, 454 U.S. 235, 255-56 (1981) (recognizing a distinction between resident or

citizen plaintiffs and foreign plaintiffs).  The reason for this is simple.  "Because

the central purpose of any forum non conveniens inquiry is to ensure that the trial

is convenient, a foreign plaintiff's choice deserves less deference."  Id. at 256; see

also American Tel. & Tel. Co., 736 F. Supp. at 1306 (denying deference to New

York company's choice of New Jersey as venue despite its having a "considerable

presence" in that State); Qudes v. Block, 516 F. Supp. 13, 14 (D.D.C. 1981)

(giving less weight to plaintiff's choice when transferring venue would result in negligible inconvenience to the plaintiff).

Second, Plaintiff's choice is only entitled to deference if there is some rational basis for that choice.  See Duckworth, 2009 WL 2231199 at *2 (granting motion to transfer venue where no parties were residents of new Jersey and substantial events did not occur there); American Tel. & Tel. Co., 736 F. Supp. at 1306 ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.").  As discussed in detail both above and below, there is no connection between the underlying facts of this case and New Jersey.

Despite Plaintiff's choice to file this action in New Jersey, it makes no sense to litigate in this forum.  Plaintiff himself recognizes that venue in the Central District of California is appropriate.  The draft complaint he circulated just two weeks before filing the action reflects that, at that time, he intended to file the action in the Central District of California.

  **b)  Plaintiff's Claims Did Not Arise In New Jersey**

As set forth in detail at Section I.B.2., above, Plaintiff does not allege that any of his claims arose from conduct that occurred in New Jersey.

### c)   Convenience of the Parties Weighs in Favor of Transfer

The Third Circuit has noted that in considering the convenience of the parties, attention should be given to their relative physical and financial condition. See Jumara, 55 F.3d at 879; Liggett Group Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518, 533 (2000).   In Liggett, the Court recognized that "from an economic standpoint it certainly makes sense to conduct a trial . . . where only one party and witnesses have to travel rather than where both parties have to travel." 102 F. Supp. 2d at 533 (ellipses in original; internal quotation omitted).

In this case, none of the parties are located in New Jersey.  Transferring the case to the Central District of California would ensure that only one party, Plaintiff, would be traveling.  However, Plaintiff would have to travel even if the case were to remain in New Jersey.  While defendants may be better suited to bear the financial cost of traveling, Plaintiff, who will have to travel either way, has not alleged a significant reason for choosing New Jersey as a forum in the first instance.  Accordingly, the convenience of the parties weighs in favor of transfer.

### d)   Convenience of Potential Witnesses Weighs in Favor of Transfer

Courts accord more weight to the location where "[t]he amenability of potential witnesses to compulsory process" is likely.  Nat'l Property Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 328 (D.N.J. 1995); see also Rutherford v. Sherbourne Corp., 616 F. Supp. 1456, 1463 (D.N.J. 1985) (granting motion to

23

transfer venue because it was of "primary importance" that most significant nonparty witnesses resided in another district).  In this case, all of the defendants reside in California for jurisdictional purposes, and it is likely that witnesses who can testify about the facts alleged in the Complaint are also located there. Conversely, Plaintiff's only allegation in support of his choice of venue is that the movie and DVD "The Hurt Locker" was distributed to various movie theaters and retail stores across the country, including New Jersey.  See Compl., at ¶17. Plaintiff's allegation is unavailing because it fails to establish that the convenience of the parties or potential witnesses would be served by proceeding with this litigation in New Jersey.

Because all of the defendants reside in California, it is more likely that other potential witnesses in this case will reside in California, as opposed to New Jersey. Therefore, California's Central District is the more convenient forum for potential witnesses.

### e)   Access to Documentary Evidence Weighs in Favor of Transfer

A substantial amount of the documentary evidence relevant to this action is in California, where most of the nonparty and party witnesses reside.  Conversely, since none of the parties are located in New Jersey, there is no indication that any documentary evidence is located here.  Litigating in New Jersey would require that each and every witness, and all documentary evidence, be transported across the

24

country.   Thus, the ease of access to documentary evidence in the Central District of California weighs in favor of transfer.

> **2.     The Public Interest Factors Weigh In Favor Of Transferring The Action To California.**

Consideration of the following public interest factors also weigh in favor of transfer of forum:

> **a)     California Has a Local Interest in this Lawsuit**

California is home to nearly all of the defendants, and all of the defendants are alleged to conduct business in the State.  See Compl., ¶¶3-15.   Therefore, California has a strong interest in this lawsuit.

Conversely, New Jersey does not have a local interest in this lawsuit. Although Plaintiff alleges that the movie and DVD "The Hurt Locker" was distributed to various movie theaters and retail stores across the country, including New Jersey, that fact alone certainly does not create a local interest in this lawsuit sufficient to justify maintaining this lawsuit in New Jersey.   Indeed, Plaintiff concedes in the Complaint that the film was distributed to various movie theaters and retail stores *across the country*.   New Jersey is not unique in this regard. Furthermore, Plaintiff is not a resident of New Jersey.   None of the defendants maintain their principal place of business in New Jersey.   The Film was not produced in New Jersey, and the alleged facts that lead to the production of the

Film did not occur in New Jersey.  Therefore, California has a strong local interest in this lawsuit as opposed to New Jersey.

### b)    New Jersey Law Will Not Govern this Case

"An important public interest factor is the desire to have the case tried before judges familiar with the applicable law." <u>Hoffer v. InfoSpace.com, Inc.</u>, 102 F. Supp. 2d 556, 576 (D.N.J. 2000) (citation omitted).  Under New Jersey choice of law rules, "the law of the state that has the most significant connections with the parties and the action applies." <u>Id.</u>  If the case were to be transferred to California, the same New Jersey choice of law rule would apply since a transferee court applies the choice of law principles of the transferor forum.  <u>See</u> <u>Ferens v. John Deere Co.</u>, 494 U.S. 516, 524-25 (1990).  In this case, New Jersey has virtually *no* connection to the parties or the action and therefore New Jersey law will not apply. The fact that California law may govern some or all issues, whereas New Jersey law will likely govern none, supports transfer of the case.

### c)    The Burden of Jury Duty Should Not Be Imposed on New Jersey Citizens

"The burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation." <u>Liggett</u>, 102 F. Supp. 2d at 536 (internal quotation and citation omitted).  Jurors in New Jersey "should not be burdened with adjudicating a matter concerning decisions and/or conduct which occurred predominately outside the State of New Jersey." <u>Id.</u> (internal quotation

and citation omitted).  As discussed previously, none of the conduct that allegedly

caused Plaintiff's alleged damages occurred in New Jersey.  Thus, this factor also

weighs in favor of transfer to California.[4]

        In sum, Plaintiff fails to allege any significant reason (much less a legal

basis) for choosing New Jersey as a forum.  As discussed above, consideration of

the private and public factors favor a transfer to California.

### 3.    The Number And Type Of Factors Weighs Heavily In Favor Of Transfer To California

        The private and public interest factors both strongly indicate that this lawsuit

should be transferred to the Central District of California.  Without exception, each

factor tips in favor of California.  Therefore, if the Court does not dismiss this

action pursuant to Fed. R. Civ. Proc. 12(b)(3), Defendants Hurt Locker, Voltage

Pictures, and Chartier respectfully request that the Court exercise its discretion and

transfer the action to the United States District Court for the Central District of

California.

## IV.    EACH OF THE CLAIMS ASSERTED AGAINST THE HURT LOCKER, VOLTAGE PICTURES, AND CHARTIER FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED

### A.    Standard of Review

        A motion to dismiss a complaint pursuant to Rule 12(b)(6) tests the legal

sufficiency of the claims asserted.  For purposes of this motion only, the Court

---

[4] Plaintiff's Complaint includes a jury demand.  See Complaint, p. 26.

27

accepts as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the plaintiff. See Phillips v. County of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009) (holding that the holding in Twombly enunciated the standard applicable review of all complaints). "[A court is] not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above a speculative level, [ ] on the assumption that all factual allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-56.

Even accepting the factual allegations in the Complaint as true – and rejecting any legal conclusions – all of Plaintiff's claims against Defendants Hurt Locker, Voltage Pictures and Chartier fail as a matter of law and must be dismissed.

**B.      The First Amendment Bars Plaintiff's Claims For Right of Publicity, False Light, and Defamation, And, Therefore, Counts I, II And III Should Be Dismissed**

It is well established that the First Amendment to the United States Constitution provides broad protection for expressive works including music, pictures, films, photographs, paintings, drawings, engravings, prints, and sculptures.  ETW Corp. v. Jireh Publishing, Inc., 332 F.3d 915, 924 (6th Cir. 2003) (citations omitted); see also Rogers v. Grimaldi, 875 F.2d 994, 997 (2d Cir. 1989) ("Movies, plays, books, and songs are all indisputably works of artistic expression and deserve protection").   Expressive works do not lose First Amendment protection when sold for profit.  See New Kids On The Block v. News America Pub., Inc., 745 F. Supp. 1540, 1546 (C.D. Cal. 1990) (books, newspapers, magazines and movies do not lose safeguards of First Amendment simply because they are sold for profit) citing Joseph Burstyn, Inc. v. Wilson, 343 U.S. 495, 501-02 (1952).  Motion pictures, such as the movie at issue in this case, fall within the First Amendment guarantee.  See Schad v. Borough of Mt. Ephraim, 452 U.S. 61, 65 (1989).

Therefore, Plaintiff's claims for Right of Publicity/Misappropriation of Name and Likeness, False Light Invasion of Privacy, and Defamation are proper only if he can show that Defendants used his likeness or persona and that such purported use was wholly unrelated to the content of the Film.  See Rogers, 875

29

F.2d at 1004; <u>Ruffin-Steinbeck v. dePasse</u>, 267 F.3d 457 (6th Cir. 2010); <u>New Kids On The Block</u>, 745 F. Supp. at 1547.

Here, Plaintiff claims the opposite, <u>i.e.</u>, he specifically claims that Defendants used his likeness and persona for the content of the Film.  For example, Plaintiff specifically alleges that, "the movie and the movie's main character … is really the Plaintiff, the Plaintiff's name and likeness, and Plaintiff's personal story which were misappropriated by Defendants without Plaintiff's consent."  Compl., at ¶63.   Plaintiff also expressly asserts that, "Plaintiff's colleagues, family members, and friends, easily recognize that the movie's main character Will James and the movie itself are about the Plaintiff Sgt. Jeffrey Sarver personally, both with respect to his actions while in Iraq, as well as his actions at home and with his family."  Compl. at ¶64.

Plaintiff has not pled any facts that would overcome the general principle that expressive works, such as the Film, are entitled to First Amendment protection.  Accordingly, Counts I, II, and III of the Complaint must be dismissed.

### C.   The Complaint Fails to State a Claim for Breach of Contract Against Hurt Locker, Voltage Pictures, or Chartier, And, Therefore, Count IV Should Be Dismissed

Count IV of the Complaint alleges breach of contract against all defendants. Plaintiff alleges that Defendants Hurt Locker, Voltage Pictures and Chartier were "privies" to an alleged contract between defendants Boal and Playboy, as well as to

an "express and/or implied contract / agreement" between Boal and Playboy, on the one hand, and Plaintiff, on the other hand.  Compl., ¶¶83-88.

Defendants Hurt Locker, Voltage Pictures and Chartier move to dismiss Plaintiff's breach of contract claim against them because neither Hurt Locker, Voltage Pictures nor Chartier was a party to a contract to which Plaintiff was also a party.  The lack of privity between Hurt Locker, Voltage Pictures, and Chartier, on the one hand, and Plaintiff, on the other hand, dooms Plaintiff's contract claim against these defendants because no breach could have occurred in the absence of privity.  See Spring Motors Distributors, Inc. v. Ford Motor Co., 98 N.J. 555, 590 (1985) ("The absence of privity in its traditional sense would generally constitute an insurmountable obstacle to recovery for losses for breach of contract."); Gherardi v. Board of Educ. of the City of Trenton, 53 N.J. Super. 349, 360 (App. Div. 1958) ("Since defendant architects, employed by the Board, did not have any contractual obligations or agreement with plaintiff, they could not, under any theory, be held liable to him for any breach of contract since there was clearly no privity of contract between the parties.").   Accordingly, Count IV should be dismissed.

### D. The Complaint Fails to State a Claim For Intentional Infliction of Emotional Distress Against Hurt Locker, Voltage Pictures or Chartier, And, Therefore, Count V Should Be Dismissed

Count V of the Complaint alleges intentional infliction of emotional distress against all defendants.  To state a claim of intentional infliction of emotional distress under New Jersey law, a plaintiff must allege specific facts that each defendant (1) acted intentionally or recklessly, and (2) outrageously, and (3) proximately caused (4) the plaintiff to suffer severe distress.  Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366 (1988); G.D. v. Kenny, 411 N.J. Super. 176, 194 (App. Div. 2009); Young v. Hobart West Group, 385 N.J. Super. 448, 467-68 (App. Div. 2005).  "A court determines whether outrageous conduct could possibly be found as a matter of law based on the facts, while a jury determines if in fact that conduct was outrageous."  G.D., 411 N.J. Super. at 194 (citing Taylor v. Metzger, 152 N.J. 490, 509-10 (1998)).

Here, Plaintiff has failed to state a claim for intentional infliction of emotional distress and Count V should be dismissed.  Plaintiff has not alleged any intentional or reckless conduct or actions by Hurt Locker, Voltage Pictures, and/or Chartier.  Likewise, Plaintiff has failed to plead any facts that the conduct or actions of Hurt Locker, Voltage Pictures, and/or Chartier was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." <u>Buckley</u>, 111 N.J. at 366.  In addition, Plaintiff does not allege any specific facts in the Complaint concerning the alleged severe emotional distress, including either physical illness or serious psychological trauma, that he has suffered relating to the release of Film.  <u>See</u>, <u>e.g.</u>, <u>Turner v. Wong</u>, 363 N.J. Super. 186, 200 (App. Div. 2003) (citing cases and holding that "[s]evere emotional distress is a severe and disabling emotional or mental condition which may be generally recognized and diagnosed by trained professionals.").  The Plaintiff has merely pled the elements of a cause of action for intentional infliction of emotional distress using labels and conclusions, which is insufficient.  <u>See</u> <u>Twombly</u>, 550 U.S. at 555.  Count V should be dismissed.

### E.   The Complaint Fails to State a Claim For Intentional or Constructive Fraud Against Hurt Locker, Voltage Pictures, or Chartier, And, Therefore, Counts VI and VII Should Be Dismissed

#### 1.   Plaintiff's Claim for Intentional Fraud Fails

Count VI of Plaintiff's Complaint alleges actual / intentional fraud against all defendants.  Fed. R. Civ. P. 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  This requires Plaintiff to "state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'  To satisfy this standard, the plaintiff must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or

some measure of substantiation into a fraud allegation." Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007) (quoting and citing Lum v. Bank of Am., 361 F.3d 217, 223-24 (3d Cir. 2004)).

To state a claim for common law fraud under New Jersey law, a plaintiff must allege (1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 172-73 (2005). Here, Plaintiff lumps all of the Defendants together in pleading his actual fraud claim. He generally alleges:

> "the Defendants were likely already in the process of writing a 'movie' for their own material and commercial gain, made possible only through the Defendants' exploitation and amusement of a soldier who was risking his life on a daily basis in the theater of war, not just for the protection of his country and the Iraqi citizens, but also for the personal protection of the Defendant BOAL.

Compl., ¶101. As the plain language of this paragraph makes clear, Plaintiff is merely speculating that all of the Defendants somehow acted fraudulently.

Plaintiff's allegations fall far short of satisfying the heightened pleading standard under Fed. R. Civ. P. 9(b) and likewise fail to satisfy the pleading requirements set forth in Twombly and Iqbal. The Complaint does not allege any specific acts undertaken by either Hurt Locker, Voltage Pictures, or Chartier that puts them on notice of their alleged misconduct. The Complaint lacks the

34

precision or substantiation that is necessary to sustain an actual fraud claim. Further, paragraphs 104-106 of the Complaint merely recite the elements of a cause of action for actual fraud, which is no longer sufficient post-Twombly and Iqbal. Accordingly, Count VI of the Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P. 9(b) and Fed. R. Civ. P. 12(b)(6).

### 2.    Plaintiff's Claim for Constructive Fraud/Negligent Misrepresentation Fails

Count VII of Plaintiff's Complaint alleges negligent misrepresentation against all defendants. Again, for purposes of this count, the Plaintiff simply lumps all of the defendants together. Under New Jersey law, to state a claim for negligent misrepresentation, a plaintiff must plead four separate elements: 1) the defendant negligently provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages. Karu v. Feldman, 119 N.J. 135, 147 (1990).

Like Count VI for intentional fraud, Plaintiff's negligent misrepresentation count fails to state a claim against Hurt Locker, Voltage Pictures, or Chartier and should be dismissed. The claim, which is really one for negligent omission, is based solely on the allegation that the defendants as a group never informed Plaintiff that the purpose of gathering information from him was to create and produce a movie about his life. Compl., ¶110. However, there are no allegations

35

in the Complaint setting forth why Hurt Locker, Voltage Pictures or Chartier owed Plaintiff a duty of care or that any harm to Plaintiff was foreseeable to these defendants.   In addition, Plaintiff has failed to plead why Hurt Locker, Voltage Pictures and Chartier owed Plaintiff a duty of disclosure.   See South Broward Hosp. Dist. v. Medquist Inc., 516 F. Supp. 2d 370, 395-97 (D.N.J. 2007) (negligent misrepresentation claim dismissed because plaintiff failed to adequately plead defendant had a duty to disclose), aff'd, 258 Fed. Appx. 466 (3d Cir. 2007); see also Maertin v. Armstrong World Indus., 241 F. Supp. 2d 434, 461 (D.N.J. 2002) ("There are three general types of transactions where a duty to disclose arises:  (1) where a fiduciary duty exists between the parties, (2) where the transaction itself calls for perfect good faith and full disclosure, or (3) where one party expressly reposes trust and confidence in the other").  Given these two pleading deficiencies, Count VII should be dismissed as against Hurt Locker, Voltage Pictures and Chartier.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants Hurt Locker, Voltage Pictures, and Chartier respectfully request that this Court grant their motion to dismiss.


Dated:  June 1, 2010                    Respectfully submitted,


                                        /s/ Charles J. Falletta
                                        Charles J. Falletta
                                        **SILLS CUMMIS & GROSS P.C.**
                                        One Riverfront Plaza
                                        Newark, NJ  07102-5400
                                        (973) 643-7000

                                        -and-

                                        Of Counsel
                                        **EISNER, FRANK & KAHAN**
                                        9601 Wilshire Blvd., Suite 700
                                        Beverly Hills, California 90210
                                        P: (310) 855-3200
                                        F: (310) 855-3201
                                        *Attorneys for Defendants The Hurt Locker, LLC, Voltage Pictures, LLC, and Nicolas Chartier*