NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SGT. JEFFREY S. SARVER, | : | **Hon. Dennis M. Cavanaugh** |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| THE HURT LOCKER, LLC; MARK BOAL; KATHRYN BIGELOW; NICHOLAS CHARTIER; TONY MARK; DONALL MCCLUSKER; SUMMIT ENTERTAINMENT, LLC; VOLTAGE PICTURES, LLC; GROSVENOR PARK MEDIA, LP; FIRST LIGHT PRODUCTIONS, INC.; and PLAYBOY ENTERPRISES, INC., Jointly and Severally, | : | Civil Action 2:10-cv- 01076 (DMC)(MF) |
| Defendants | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before this Court upon motion by The Hurt Locker *et al*., ("Defendants") to dismiss the complaint by Sgt. Jeffrey S. Sarver ("Plaintiff") pursuant to Fed. R. Civ. P. 12(b)(2)(3) or in the alternative, to transfer venue pursuant to 28 U.S.C. 1404(a). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After carefully considering the submissions of all parties, it is the decision of this Court that Defendants' motion is **denied** in part and **granted** in part**.**

1

## I.        BACKGROUND

This case arises out of a film, "The Hurt Locker," ("the film") which won the Academy Award for Best Picture in 2010, amongst many other awards. The film depicts the activities of an Explosive Ordnance Disposal ("EOD") unit charged with the responsibility to detect, defuse and dispose of  improvised explosive devices, known as IED's, and other bombs in Iraq.

Prior to the filming and distribution of the film, Defendant Mark Boals, a journalist, was embedded with the 788th Ordnance Company pursuant to an agreement with the U.S. Army Command that allowed journalists access to the battlefield, and enabled them to live, travel and work with soldiers in the field in an effort to provide accurate media coverage of the war in Iraq. Sgt. Sarver was a member of the unit in which Boals was embedded for one month, beginning in December, 2004.

After Boals returned from Iraq to the United States, he wrote an article about Sgt. Sarver and his unit which was published in Playboy Magazine in its August/September issue of 2005. The article quotes from Boals' conversations with Sgt. Sarver, and includes a photo of Sgt. Sarver as well. Subsequent to the publication of the article, Boals wrote the screenplay for the film, which was directed by Defendant Kathryn Bigelow. The other named Defendants, other than Playboy Enterprises, Inc., were all involved with the production and/or the distribution of the film.

## II.        LEGAL STANDARD

A.        Personal Jurisdiction; 12(b)(2) and 12(b)(3)

"Once challenged, a plaintiff bears the burden of establishing personal jurisdiction." *Pro Sports Inc. v. West,* 639 F.Supp.2d 475, 478 (D.N.J.2009) ( *citing General Elec. Co. v. Deutz AG,*

270 F.3d 144, 150 (3d Cir.2001) (finding the plaintiff must demonstrate "[a] nexus between defendant, the forum, and the litigation.")). "Once the plaintiff has shown minimum contacts, the burden shifts to the defendant, who must show that the assertion of jurisdiction would be unreasonable." *Krishanthi v. Rajarantnam,* No. 09-5395(DMC), 2010 WL 3429529 (D.N.J. Aug,. 26, 2010) (citations omitted) (quoting *Ameripay, LLC v. Ameripay Payroll, Ltd.,* 334 F.Supp.2d 629, 633 (D.N.J.2004)). "However, when the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir.2004); *See also Carteret Say. Bank, FA v. Shushan,* 954 F.2d 141, 142 n. 1 (3d Cir.1992). "If the contents of the plaintiff's complaint conflict with the defendant's affidavits, the district court must construe all reasonable inferences that can be drawn from the papers in the plaintiff's favor." 4 Wright & Miller, *Federal Practice and Procedure:* Civil 3d § 1067.6 (3d ed.2002).

" Pursuant to Federal Rule of Civil Procedure 4(e), federal 'district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits.' " *Rothstein v. Harstad,* No. 10-1421(WHW), 2010 WL 3259789, *1 (D.N.J. Aug.17, 2010) (quoting *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.,* 5 F.3d 28, 31 (3d Cir.1993)). "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales,* 384 F.3d at 96 (citing N.J. Court Rule 4:4-4(c)); *Charles Gendler & Co. v. Telecom Equip. Corp.,* 102 N.J. 460, 508 A.2d1127(1986)). "[T]he due process analysis focuses on the non-resident defendant's 'minimum contacts' with the forum." *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d

3

324, 334 (3d Cir.2009) (quoting *Burger King v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).However, when a state exercises personal jurisdiction over a defendant in a suit that arises out of the defendant's contact with that state, it is said to be exercising specific jurisdiction. *Id* . at 414 n.8, 104 S.Ct. at 1872 n.8, 80 *L. Ed.*2d at 411 n.8. In such a case, the minimum contacts inquiry focuses upon "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.,* 465 *U.S.* 770, 775, 104 *S.Ct.* 1473, 1478, 79 *L. Ed.*2d 790, 798 (1984) (quoting *Shaffer v. Heitner,* 433 *U.S.* 186, 204, 97 *S.Ct.* 2569, 2580, 53 *L. Ed.*2d 683, 698 (1977)). "The 'minimum contacts' requirement is satisfied so long as the contacts resulted from the defendant's purposeful conduct and not the unilateral activities of the plaintiff." *Lebel v. Everglades Marina, Inc.,* 115 *N.J.* 317, 323 (1989) (citing *World-Wide Volkswagen Corp. v. Woodson,* 444 *U.S.* 286, 297-98, 100 *S.Ct.* 559, 567-68, 62 *L. Ed.*2d 490, 501-02 (1980)). A state may not exercise jurisdiction over a defendant as a result of contacts that are "random," "fortuitous" or "attenuated." *Burger King Corp. v. Rudzewicz,* 471 *U.S.* 462, 475, 105 *S.Ct.* 2174, 2183, 85 *L. Ed.*2d 528, 542 (1985) (quoting *Keeton, supra,* 465 *U.S.* at 774, 104 *S.Ct.* at 1478, 79 *L. Ed.*2d at 797; *World-Wide Volkswagen, supra,* 444 *U.S.* at 299, 100 *S.Ct.* at 568, 62 *L. Ed.*2d at 502). "The question is whether 'the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably anticipate being haled into court there.' " *Lebel, supra,* 115 *N.J.* at 324 (quoting *World-Wide Volkswagen, supra,* 444 *U.S.* at 297, 100 *S.Ct.* at 567, 62 *L. Ed.*2d at 501).

B.    <u>Venue; 28 U.S.C.A. § 1404(a) and 28 U.S.C.A. § 1391(a)</u>

In relevant part, 28 U.S.C.A. § 1404(a) states, "for the convenience of parties and

4

witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it may have been brought."  Pursuant to 28 U.S.C.A. § 1391(a), for civil actions based on diversity of citizenship, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. "

The Third Circuit has stated that in any transfer request the plaintiff's choice of forum is a "paramount consideration," and its choice should not be lightly disturbed. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). When a plaintiff chooses his home forum, traditionally the choice has been "entitled to greater deference," *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255, 102 S.Ct. 252, 265, 70 L.Ed.2d 419 (1981), at least when it coincides with a district in which a substantial part of the events or omissions giving rise to the claim occurred. The plaintiff's choice of forum is not, however, dispositive. *American Tel. & Tel. Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1306 (D.N.J.1990). Moreover, "[w]hen the central facts of a lawsuit occur outside the forum state, a plaintiff's selection of that forum is entitled to less deference." *Ricoh Co., Ltd. v. Honeywell Inc.,* 817 F.Supp. 473, 481 (D.N.J.1993). *See also National Micrographics Systems v. Canon U.S.A.,* 825 F.Supp. 671, 681 (D.N.J.1993).

5

"The burden of showing the need for transfer rests with the movants." *See Jumara v.*

*State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Also, "although the district court has wide

discretion in transferring a case, transfers should not be liberally granted." *Superior Precast v.*

*Safeco Ins. Co. of Am.,* 71 F.Supp.2d 438, 445 (E.D.Pa.1999).

In construing the statutory language of 28 U.S.C.A. § 1404(a), the Third Circuit has

pointed out that "commentators have called on the courts to consider all relevant factors to

determine whether on balance the litigation would more conveniently proceed and the interests of

justice be better served by transfer to a different forum." *Jumara v. State Farm Ins.* Co., 55 F. 3d

873, 879 (3d Cir., 1995). As enumerated by the *Jumara* Court,

> There are a number of relevant private and public factors a court should consider
> In deciding a motion to transfer. The private factors include: (1) plaintiff's choice
> of forum; (2) defendant's preference; (3) whether the claim arose elsewhere; (4)
> the convenience of the parties as indicated by their relative physical and financial
> conditions; (5) the convenience of witnesses, only to the extent that they may be
> unavailable for trial in one of the fora; and (6) the location of books and records,
> again only to the extent that they could not be produced in one of the fora.  The
> public interests include: (1) enforceability of the judgment; (2) practical
> considerations that could make the trial easy, expeditious, or inexpensive; (3)
> relative administrative difficulties in the two fora resulting from court congestion;
> (4) local interests in deciding local controversies at home; (5) public policies of
> the fora; and (6) the familiarity of the trial judge with the applicable state law in
> diversity cases. (*Id.* at 879-880).

In analyzing the third factor, the Court  is specifically instructed to consider the situation

"where the central facts of a lawsuit occur outside the chosen forum." *In re Consolodated*

*Parlodel Litigation,* 22 F. Supp. 2d 320, 323 (D.N.J. 1998).

## III.   DISCUSSION

A. Personal Jurisdiction

Plaintiff argues that this Court may exercise specific personal jurisdiction over the

Defendants because New Jersey's long-arm statute permits service on a non-resident defendant to the extent permitted by the Constitution. To comport with due process such that a forum state may exercise personal jurisdiction over a defendant, the defendant must have minimum contacts with the forum such that the lawsuit "does not offend 'traditional notions of fair play and substantial justice.' " *Int'l Shoe Co. v. Washington,* 326 *U.S.* 310, 316, 66 *S.Ct.* 154, 158, 90 *L. Ed.* 95, 102 (1945) (quoting *Milliken v. Meyer,* 311 *U.S.* 457, 463, 61 S.Ct. 339, 343, 85 *L. Ed.* 278, 283 (1940)). Those notions concern whether or not Defendant might have foreseen the possibility that he would have to defend in Plaintiff's chosen forum.

Defendants would have this Court accept that screening the Hurt Locker over a period of weeks in selected movie theaters in New Jersey, and distributing the DVD of the film throughout the state does not establish minimum contacts. The Court disagrees, and finds that this constitutes both minimum contacts and purposeful availment of the commercial benefits of doing business in the state. The facts as pled in Plaintiff's complaint and subsequent response to Defendants' moving papers are sufficient to make the prima facie case for personal jurisdiction that is required. The nationwide release of the film ought to have put Defendants on notice that they might be haled into court in any forum in which the film was shown or distributed.  While it may be difficult to foresee how the distribution of a film might lead to a cause of action, there is no doubt that once a cause based on the ability to view the film had accrued, any state  in which the film was screened might be a possible forum. While the precise cause of action might not have been foreseeable, New Jersey's potential as a  forum ought to have been.

B.    Venue

Ironically, while the Court may exercise personal jurisdiction over Defendants, Plaintiff's

ties to New Jersey in this matter are much more tenuous. Although Plaintiff's complaint avers that "at all times relevant Plaintiff was a resident of the City of Dover, State of New Jersey,"  it also states that since August, 2009 he has lived in Clarksville, Tennessee. (ECF Doc. 1, Complaint, page 2). Presumably, the relevant time period that Plaintiff refers to would have been when his residence in New Jersey coincided with Defendants' minimum contacts with the State. But, as Plaintiff's complaint further alleges, the film was first distributed in only four theaters in New York and Los Angeles on June 26, 2009, and later to select theaters on July 24, 2009.  The film was only released and shown nationwide on January 12, 2010 by which time Plaintiff had moved out of New Jersey. Plaintiff's choice of New Jersey as a forum seems nothing less than arbitrary. While the Court is mindful of the presumption in favor of Plaintiff's choice of venue, and the six private factors to be weighed, none of those factors favor Plaintiff with the exception of the seemingly random choice of New Jersey as forum. The fact that neither the Plaintiff, nor any of the witnesses, documents, Defendants or events that gave rise to the litigation are tied to New Jersey in any meaningful way weighs heavily in favor of transfer to the Central District of California. Were the convenience of Plaintiff a major concern, especially in a situation where a private individual has sued several corporate entities who quite likely have more substantial resources at their disposal, the Court would weigh the convenience factor differently, but since Plaintiff resides in Tennessee, it is hard to understand how New Jersey represents a more convenient forum for Plaintiff.

As to the public factors that the Court must weigh, most of them of them favor neither side. Were they in true equipoise, the Court might base its decision on the presumption in favor of Plaintiff's choice, although that is not meant to be dispositive in and of itself. The practical

considerations, however,  heavily favor Defendants, all  thirteen of whom either reside, or have corporate residences, in California.

## IV.    **CONCLUSION**

For the foregoing reasons, it is the decision of this Court that Defendants' motion to dismiss pursuant to Civ. R. of P. 12(b)(2)(3) is **denied**, and  Defendant's motion to transfer venue to the Central District of California  pursuant to 28 U.S.C.A. § 1404(a) is **granted**. An appropriate Order follows this Opinion.

 S/ Dennis M. Cavanaugh_____
DENNIS M. CAVANAUGH, U.S.D.J.

Date:   November   18  ,  2010
cc:     Hon. Mark Falk, U.S.M.J.
        Counsel of Record

9